## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **ABDEL K. FUSTOK, M.D. et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 12-cv-787** |
| | § | |
| **UNITEDHEALTH GROUP, INC. et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Counter-Defendants' Motion to Dismiss Counter-Plaintiffs' Counterclaims. (Doc. No. 52.) After considering the motion, all responses thereto, and the applicable law, the Court finds that Counter-Defendants' Motion to Dismiss must be **DENIED.**

### I.     BACKGROUND

This case is brought by Plaintiffs/Counter-Defendants Abdel K. Fustok, M.D. and Abdel K. Fustok, M.D., P.A. (collectively "Fustok") against Defendants/Counter-Plaintiffs United Healthcare Services, Inc and UnitedHealthcare Insurance Company (collectively, "United") for reimbursement of medical services. United then filed counterclaims against Fustok, alleging that Fustok has been performing procedures for cosmetic, rather than for therapeutic, purposes, making them ineligible for reimbursement. (Doc. No. 47, "Second Amended Counterclaims", ¶ 2.) United alleges

that Fustok engaged in a fraudulent scheme to obtain payment for procedures that were not reimbursable. (*Id.* at ¶ 4.)

United insures benefits and provides claim administration services under health benefit plans sponsored by employers. (*Id.* at ¶ 22.) In this role, United pays claims under insurance policies it has issued to the plans or provides administrative services in the payment of claims with respect to individuals covered by these benefit plans. (*Id.*)

Fustok is licensed to practice medicine in Texas and served as an in-network health care provider for United before 2007. (Doc. No. 52 ¶ 1.) "In-network" means that participating providers contract with United to provide specific services pursuant to a fee schedule, and they receive payments directly from United for those services. (Second Amended Counterclaims ¶ 23.) Beginning in 2007, Fustok switched to be an out-of-network health care provider for United. (Doc. No. 52 ¶ 2.) Out-of-network providers may seek reimbursement for covered procedures directly from United if an individual participant assigns to the provider his or her right to payment on the claim. (Second Amended Counterclaims ¶ 26.) In that case, the out-of-network provider must submit a health service claim form to United, using an alphanumeric coding regime to indicate the procedure provided (called a Current Procedural Terminology code ("CPT Code"), the professional who performed the service, and the provider's standard charge for the service. (*Id.* at ¶ 30.) If the service is determined to be covered by the plan, then reimbursement is made directly to the provider rather than to the United member. (*Id.*)

United claims that it receives hundreds of millions of claims for benefits each year. Therefore, to timely process reimbursements, United relies on the veracity of the

submitted claims. (*Id.* at 27.) In November 2009, a representative of one of United's employer sponsors informed United that employees in its office were openly sharing the fact Fustok was providing care that was cosmetic in nature, but misrepresenting the services rendered and the patients' diagnostic information to get reimbursements from United. (*Id.* at ¶ 28.) Upon learning this information, United began a prospective review of Fustok's billing practicing and found three types of fraudulent billing practices, which are the basis of these counterclaims. (*Id.* at ¶ 29.)

United alleges that Fustok submitted claim forms using incorrect CPT Codes for cosmetic procedures Fustok knew were not covered. Specifically, United alleges that Fustok used CPT Code 15734 (describing muscle, myocutaneous, or fasciocutaneous flap; trunk), CPT Code 11471 (describing excision of skin and subcutaneous tissue for hidradenitis, perianal, perineal; with complex repair), and CPT Code 15002 (describing surgical preparation or creation of recipient site by excision of open wounds, burn eschar, or scar, or incisional release of scar contracture, trunk, arms), for services that are appropriately billed under CPT Code 15830 (describing excision of excessive skin and subcutaneous skin, abdomen, infraumbilical panniculectomy). (*Id.* at ¶ 31.) United claims Fustok never performed the procedures described by the first three CPT Codes above. Instead, CPT Code 15830 was performed, which is not a reimbursable procedure. (*Id.* at ¶ 32.)

United alleges a second fraudulent use of CPT codes. United alleges that Fustok performed cosmetic brachioplasties, more commonly known as arm lifts, which are not a covered procedure, and submitted the claim under other CPT Codes describing procedures that were covered. (*Id.* at ¶ 33.)  United alleges that Fustok billed the arm

lifts, which are properly billed as CPT Code 15836 (describing excision of excessive skin and subcutaneous skin; arm), as CPT Code 15736 (describing muscle, myocutaneous, or fasciocutaneous flap; upper extremity), CPT Code 11471 (describing excision of skin and subcutaneous tissue for hidradenitis, perianal, perineal; with complex repair), and CPT Code 15836 (describing surgical preparation or creation of recipient site by excision of open wounds, burn eschar, or scar (including subcutaneous tissues), or incisional release of scar contracture, trunk, arms). (*Id.*) United claims that Fustok never performed the three billed CPT Codes, which were covered procedures, but instead, performed arm lifts. (*Id.* at ¶ 34.)

Lastly, United alleges that Fustok engaged in improper unbundling of procedures. Unbundling is the fraudulent practice of expanding into separate units the components parts of a larger procedure, and then billing for both the larger procedure and its component parts. (*Id.* at ¶ 35.)

United claims that between December 9, 2007 and December 9, 2010, Fustok submitted a total of 1,954 claims to United, which resulted in a total payment of $1,427,332 on suspect codes. United claims that had proper codes been used, United would not have paid a significant portion or any of that amount. (*Id.* at ¶ 37.) In December 2010, United submitted a complaint to the Texas Department of Insurance and the Texas Medical Board. (*Id.* at ¶ 38.) The counterclaim alleges two causes of action. First, United brings a claim for fraud and intentional or reckless misrepresentation. Second, United brings an action for equitable relief under ERISA.

## II.     LEGAL STANDARD

### A.  Failure to State a Claim

Federal Rule of Civil Procedure 8(a) requires that a plaintiff's pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a plaintiff fails to satisfy Rule 8(a), a defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *see also Bank of Abbeville & Trust Co. v. Commonwealth Land Title Ins. Co.*, 2006 WL 2870972, at *2 (5th Cir. Oct. 9, 2006) (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1203 (3d ed. 2004)).

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, a complaint must contain sufficient factual matter that, if it were accepted as true, would "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim need not give rise to "probability," but need only plead sufficient facts to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  A pleading also need not contain detailed factual allegations, but it must go beyond mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

While the court must accept well-pleaded facts as true, *Iqbal*, 556 U.S. at 678, it should neither "strain to find inferences favorable to the plaintiffs" nor "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)). A court should not evaluate the merits of the allegations, but must satisfy itself only that plaintiff has adequately pled a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

### B.  Rule 9(b) Fraud

United's fraud claim is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." In the Fifth Circuit, the Rule 9(b) standard requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Southland Secs. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir.2004). Essentially, the standard requires the complaint to allege answers to "newspaper questions" ("who, what, when, where, and how") of the alleged fraud. *Melder v. Morris*, 27 F.3d 1097, 1100 n. 5 (5th Cir. 1994).

### III.   ANALYSIS

Fustok has filed a Motion to Dismiss United's counterclaims. (Doc. No. 52.) Each argument will be considered in turn.

### A.  Fraud and Intentional or Reckless Misrepresentation

#### 1.  *Elements of a Fraud Claim*

To properly plead the elements of a fraud claim under Texas law, United must plead: (1) Fustok made a material representation that was false; (2) Fustok knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) Fustok intended to induce United to act upon the representation; and (4) United actually and justifiably relied upon the representation and thereby suffered injury. *See Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983). Fustok argues that United's fraud claim must be dismissed because it fails to allege the necessary elements for a fraud claim under Texas law. Specifically, Fustok argues that United fails to plead facts demonstrating that the representations, when made, were made with the knowledge that the representation was false or made recklessly or that United justifiably relied on those misrepresentations and suffered injury. (Doc. No. 52 ¶ 16.) The Court disagrees and finds that United has properly pled all four elements of the fraud claim.

First, United set forth the precise misrepresentations that Fustok made. (Second Amended Counterclaims ¶¶ 31-36.) Fustok argues that the representations were not material as a matter of law. The Fifth Circuit has held that "[a] false representation is material if a reasonable person would attach importance to and be induced to act on the information." *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1033 (5th Cir. 2010). It would be reasonable for United to "attach importance" to a medical provider's representation of the diagnosis and nature of procedures performed and would "be induced to act on the information" when the medical provider submitted

this information with a request for reimbursement. Therefore, United has made a material representation to satisfy the first prong of the fraud claim.

Second, United has alleged that Fustok did not perform the billed procedures. (*Id.*) Fustok does not argue the presence of billing errors, but rather argues that United has not contended that the errors were fraud rather than mistakes. But the alleged facts, if taken as true, do state a claim. Third, United has alleged that Fustok intended to submit the claims to United for reimbursement. (*Id.* at ¶ 30.) Fustok does not argue with this prong.

Fourth, United has alleged that it actually and justifiably relied on these misrepresentations and issued reimbursements to Fustok. (*Id.* at ¶¶ 27.) The Fifth Circuit has held that justifiable reliance comprises two elements: (1) the plaintiff must in fact rely on the information; and (2) the reliance must be reasonable. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 501-02 (5th Cir. 2000). Fustok argues that United's reliance on his misrepresentations could not be justifiable because there were red flags indicating that such reliance was unwarranted. The Court does not accept this argument because Fustok suggests that his fraud is so egregious that United could no longer rely on the truthfulness of his diagnoses and reports. This policy would allow the most egregious of violators to escape liability. Furthermore, it does not appear that United turned a blind eye to red flags. United has pled that it receives hundreds of millions of claims for benefits each year and must rely on the truthfulness of submitted claims. (Second Amended Counterclaims ¶ 27.) Based on the high volume of claims, United's practices are reasonable. United also alleged that, as soon as it was aware of Fustok's fraudulent practices, it began to investigate his submitted claims. Therefore United actually relied on

the information by paying over $1.4 million on allegedly fraudulent claims, and such reliance was reasonable. (*Id.* at ¶ 37.) Each element of the fraud claim has been properly pled by United.

### 2.  *Rule 9(b)*

Fustok also argues that United's fraud claim must be dismissed because United has not pled with the particularity required under Rule 9(b). Specifically, Fustok argues that United fails to identify with particularity who, what, when, where, or how the representations were made for each bill. (Doc. No. 52 ¶ 24.) However, Fustok is mistaken about the requirements of Rule 9(b). "Stating with particularity the circumstances constituting fraud "does not necessarily and always mean stating the contents of a bill."" *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009).[1] This is especially true when the fraud alleged extended over a period of time, years in this case. *See Carter v. Gibson*, 2011 WL 1515049 (N.D. Tex. Apr. 20, 2011) ("But in cases where the plaintiff is alleging that the fraud occurred over a period of years, the plaintiff is not required to allege all facts supporting every instance when the defendant engaged in fraud."). United's allegations are sufficient to meet the particularity requirement for pleading a fraudulent scheme. United has pled that the misrepresentations were made on claim forms that require providers to describe the services provided to patients using a CPT Code. (Second Amended Counterclaims ¶ 30.) United has pled that the fraudulent practice occurred from December 9, 2007 until December 9, 2010. (*Id.* at ¶ 37.) United has also pled the particular codes used. The Court is satisfied that United

---

[1] Although this case is in the context of a claim under the False Claims Act, its logic applies in this case since the Fifth Circuit later went on to say the "'time, place, contents, and identity' standard is not a straitjacket for Rule 9(b)."

has provided Fustok with fair notice of its claims and has met the heightened Rule 9(b) standard of pleading.

### B. ERISA Preemption

Fustok argues that United's state law counterclaims for common law fraud and intentional or reckless misrepresentation are preempted by ERISA. ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. §1144(a). "A law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983). Although the term "relate to" is intended to be broad, "pre-emption does not occur ... if the state law has only a tenuous, remote, or peripheral connection with covered plans." *Mayeaux v. Louisiana Health Serv. & Indem. Co.*, 376 F.3d 420, 432 (5th Cir. 2004) (quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 661 (1995)). ERISA preempts a state law claim if a two-prong test is satisfied: (1) The state law claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claim directly affects the relationships among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries. *Mayeaux*, 376 F.3d at 432.

United's fraud counterclaim does not rest on disputed interpretation of the scope of coverage under the health plans it administers. Fustok does not dispute that coverage is unavailable under the United plans for procedures performed for cosmetic purposes. Instead, United's counterclaims concern what procedures were performed, and whether those procedures were performed for therapeutic purposes, and not what procedures are

covered. Whether Fustok's billing practices "are tortious does not require interpretation of the Plan." *Barker v. The Hartford Life & Acc. Ins. Co.*, CIV.A. 3:06-CV-1514P, 2007 WL 2192298 at *4(N.D. Tex. July 31, 2007). Though the Fifth Circuit has not considered a case on point, other circuit courts have found no ERISA preemption in similar cases. *See Trustees of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 782 (7th Cir. 2002) ("Because ERISA does not provide any mechanism for plan administrators or fiduciaries to recoup monies defrauded from employee benefit trust funds by plan participants, garden-variety state-law tort claims must, as a general matter, remain undisturbed by ERISA; otherwise, there would be no way for a trust fund to recover damages caused by a plan participant's fraudulent conduct."); *Geller v. Cnty. Line Auto Sales, Inc.*, 86 F.3d 18 (2d Cir. 1996) (holding no ERISA preemption of a common law fraud claim where the plaintiffs were seeking to recover damages resulting from the defendants falsely listing the girlfriend of an officer as a full-time employee in order to make her an eligible participant in the company's employee benefit plan.).

Therefore, though this fraud claim would not exist in the absence of the benefit plan, this Court finds that is too tenuous a connection to warrant ERISA preemption. United's common law fraud claim is not preempted simply because it may have a tangential impact on employee benefit plans. At this stage, the Court need not address a disputed question of plan interpretation in order to resolve United's counterclaims. *Hobson v. Robinson*, 75 F. App'x 949, 955 (5th Cir. 2003) (in holding a fraud claim was not preempted by ERISA, the Fifth Circuit stated that a "critical factor was that the fraudulent inducement claim did not require interpretation and administration of the ERISA policy"). Allowing this claim to go forward in no way compromises the purpose

of Congress and does not impede federal control over the regulation of employee benefit plans. Therefore, the Court finds no ERISA preemption of United's fraud claim.

## IV.   CONCLUSION

For the reasons discussed above, Counter-Defendants Fustok's Motion to Dismiss Counter-Plaintiffs United's Counterclaims is **DENIED.**

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 20th day of May, 2013.

_____
THE HONORABLE KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE